IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRYAN HARTWIG,

                        Plaintiff,                        OPINION AND ORDER

   v.

                                                              23-cv-8-wmc

BYRIDER FINANCE, LLC,
d/b/a Car Now Acceptance Company,

                        Defendant.

Plaintiff Bryan Hartwig claims that defendant Byrider Finance, LLC, which does business as Car Now Acceptance Company ("CNAC"), violated his rights under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, by failing to correct misleading and inaccurate account information provided to credit reporting agencies about his car loan following its discharge in bankruptcy. Before the court are the parties' cross-motions for summary judgment. (Dkt. #44 and Dkt. #50.) At a hearing on these motions on January 22, 2025, the parties addressed plaintiff's ability to prove the elements of his FCRA claim, including whether he suffered any injury from defendant's alleged violations. Plaintiff was unable to articulate any concrete harm for which he has evidentiary support, which means that he lacks constitutional standing to pursue his FCRA claims. Therefore, the court must dismiss this case for lack of subject matter jurisdiction.

UNDISPUTED FACTS[1]

A. Background

Plaintiff Bryan Hartwig is a resident of Madison, Wisconsin.  Defendant CNAC is a "d/b/a" affiliate of Byrider, a limited liability corporation known for its franchises' "buy-here, pay-here" used-car dealership network and headquartered in Carmel, Indiana.

On September 7, 2021, Hartwig purchased a 2009 Dodge Grand Caravan (the "Vehicle") from a Byrider dealership in Madison.  The Retail Installment Contract and Security Agreement ("Contract") between Hartwig and Automax LLC, a separately incorporated Byrider affiliate, provided Hartwig a loan of $13,045.35 to finance his purchase, which by its terms was secured against the Vehicle and assigned for value to Automax.  (Dkt. #53-1, at 1.)  The parties agree that CNAC is the "holder in due course of said Contract[.]"  (Dkt. #56, at 2.)  They also agree that the Contract contemplated Hartwig would pay a total of $22,285.16 over time, including all scheduled payments and interest.

B. Hartwig's Bankruptcy and Fresh Start Agreement

On February 28, 2022, Hartwig filed for Chapter 7 bankruptcy protection in the U.S. Bankruptcy Court for the Western District of Wisconsin.  Among other assets, Hartwig's bankruptcy petition and supporting schedules listed the Vehicle and the amount

---

[1] Unless otherwise indicated, the following facts are material and undisputed.  The court has drawn these facts from the parties' proposed findings, construing them and any reasonable inferences arising from them in the light most favorable to the non-movant.  *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).  Also, consistent with the undisputed facts, the above caption in this case is amended to reflect that defendant is doing business as CNAC.

2

then due under the Contract, noting that CNAC was a secured creditor. (Dkt. #48-2, at 2.) Hartwig's Statement of Intention also indicated that he planned to retain the Vehicle and reaffirm the Contract with CNAC. (Dkt. #48-3, at 2.) However, Hartwig and CNAC never actually entered into a reaffirmation agreement before discharge, nor was one later filed with the bankruptcy court for judicial approval. After Hartwig's Chapter 7 discharge was entered on May 31, 2022, therefore, CNAC's internal records indicated that Hartwig's debt on the Vehicle was discharged through bankruptcy and *not* reaffirmed. (Dkt. #56, at 8.)

Apparently because Hartwig's bankruptcy attorney had told him that he could retain the Vehicle if he made voluntary payments on the account and CNAC accepted them, Hartwig contacted CNAC after discharge to request additional time to renew payments on his account due to ongoing financial hardship. In response, CNAC then presented Hartwig with a purported "amendment" to the Contract (a so-called "Fresh Start Agreement"), which he signed on June 10, 2022. The Fresh Start Agreement contained the same account number as the original Contract, identified the same collateral, cited a loan balance of $11,961.94, and included Hartwig's agreement to continue paying for the Vehicle, but this Agreement had not been filed with nor approved by the bankruptcy court.

C. Hartwig's Credit Report Disputes

Four days before the Agreement was signed, Hartwig requested his credit report from Equifax Information Services, LLC ("Equifax") to review his credit score after bankruptcy discharge and to verify that his creditors had properly updated their account reporting. On Hartwig's Equifax report dated June 6, 2022, his account with CNAC

3

showed an outstanding balance of $11,961 and did not include any annotation that it had been included, discharged or otherwise subject to Hartwig's Chapter 7 bankruptcy. Several weeks later, Hartwig submitted a dispute with Equifax and with two other credit reporting agencies, Experian and TransUnion, advising all three that his CNAC account should not be reporting an outstanding balance but instead ought to have been closed after discharge in bankruptcy.

On July 11, 2022, CNAC received an Automated Customer Dispute Verification ("ACDV") from Equifax regarding Hartwig's account. The ACDV cited dispute code 37, which stated "ACCOUNT INCLUDED IN BANKRUPTCY. VERIFY CONSUMER INFORMATION INDICATOR." (Dkt. #47-3, at 2.) The Credit Reporting Resource Guide ("CRRG"), published by the Consumer Data Industry Association, instructs loan furnishers to report accounts discharged in bankruptcy with Consumer Information Indicator "E" that corresponds to Chapter 7 bankruptcies. CNAC has its own, internal guidelines that similarly describe how to process and collect on a discharged account not reaffirmed through Chapter 7 bankruptcy. Nevertheless, CNAC representative Barbara Fields responded to Equifax's ACDV on July 29, 2022, stating that the account was "Verified as Reported" and nothing had been modified or changed. (*Id*.) Fields' response further indicated that Hartwig's account had been opened in September of 2021 and still had an outstanding balance of $11,961. Accordingly, Equifax informed Hartwig that CNAC had *confirmed* his account had been reported accurately. TransUnion later did so as well.

4

On September 27, 2022, Hartwig ordered a second credit report from Equifax to verify that his CNAC account had been updated to reflect its inclusion and discharge in bankruptcy. However, that report also indicated that his account was open, listed an outstanding balance past due, and lacked any reference to his Chapter 7 bankruptcy filing or discharge. Further, CNAC later verified the status of Hartwig's account to reporting agencies once more. Still, according to CNAC representative Fields, Hartwig's account had by then been deleted or suppressed altogether on his credit reports from TransUnion and Equifax, while his Experian credit report had been updated to indicate that his debt was discharged in bankruptcy but still listed a balance due.

Until April of 2024, CNAC continued to contact Hartwig, asking for payments to be made towards his account, with Hartwig maintaining possession of the Vehicle and continuing to drive it. After discontinuing his voluntary payments, Hartwig eventually relinquished the Vehicle to CNAC in April of 2024.

OPINION

Congress enacted the Fair Credit Reporting Act ("FCRA") "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). To accomplish those goals, the FCRA tries to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). In turn, the FCRA also requires a "furnisher" of credit information to investigate after receiving notice of a dispute with a credit reporting agency about "the completeness or accuracy of any information" that the furnisher provided to

5

the agency, then send verified or amended data back to the agency. 15 U.S.C. § 1681s–2(b)(1). The Seventh Circuit Court of Appeals has further interpreted violations of this provision by a furnisher of information to require proof of three elements: (1) the furnisher provided incomplete or inaccurate information to the credit reporting agency; (2) the furnisher failed to conduct a reasonable investigation of the disputed information; and (3) the furnisher would have determined that the disputed information was incomplete, inaccurate, or unverifiable if it had conducted a reasonable investigation. *Frazier v. Dovenmuehle Mortgage, Inc.*, 72 F.4th 769, 775 (7th Cir. 2023).

In this case, plaintiff Hartwig claims that defendant CNAC, as a furnisher of information to credit reporting agencies, violated all three elements of the FCRA. Hartwig also claims that CNAC's conduct while investigating his dispute was so "reckless and willful" as to violate § 1681n(a) of the FCRA, entitling him to actual, statutory and punitive damages. The parties subsequently cross-moved for summary judgment.

As discussed at the January 22, 2025 hearing, the court finds that plaintiff has shown that CNAC provided incomplete or inaccurate information to the credit reporting agencies, and that there are disputed issues of fact as to whether CNAC's investigation was unreasonable and willful. Before considering these merits questions, however, there is a threshold question as to whether plaintiff suffered *any* injury as a result of CNAC's alleged violations of the FCRA. *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 876 (7th Cir. 2020) ("Our first question in any case is whether we have jurisdiction.")

In its brief in support of summary judgment, defendant framed the question of injury in terms of both (1) Article III standing and (2) damages as an element of plaintiff's

6

FCRA claim. (Dkt. #51, at 13–14.) While the court and parties discussed this issue at the January 22 hearing primarily as an element of plaintiff's claim for actual damages,[2] the court must consider the threshold question of its jurisdiction first.

To have standing to sue, a plaintiff must show three things: (1) plaintiff suffered an "injury in fact"; (2) the injury is "fairly traceable" to the challenged conduct of the defendant; and (3) the injury "is likely to be redressed" if the plaintiff obtains a "favorable judicial decision" at the close of the lawsuit. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Article III standing requires a concrete injury even in the context of a statutory violation," so "a plaintiff [does not] automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 341; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("No concrete harm, no standing."). At the summary judgment stage, a plaintiff can establish standing through an affidavit with specific facts demonstrating "a concrete and particularized injury." *Foster*, 52 F.4th at 322 (citations omitted).

In consumer protection cases brought under a federal statute, concrete harm may include reputational harm due to dissemination of a misleading credit report to a third party, *TransUnion*, 594 U.S. at 432, or deprivation of an opportunity (such as obtaining

---

[2] Whether a plaintiff must prove damages as an element of an FRCA claim depends on the FRCA provision at issue. In particular, a plaintiff may have to prove damages if asserting a claim under 15 U.S.C. § 1681e(b) for failing to follow reasonable procedures for accuracy of credit reports, but does not have to prove actual damages for a claim under § 1681s-2(b)(1)(A) for failure to conduct a reasonable investigation after receiving a dispute from a consumer reporting agency regarding inaccurate or incomplete information. *See Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 322 (7th Cir. 2022). Although this would appear to be a separate, statutory right, relieving plaintiff from proving not just actual damage but injury as well to vindicate the right, the Seventh Circuit has now repeatedly held injury is a threshold, constitutional standing question that precludes the court from proceeding on *any* FRCA claim if absent. *See* discussion *infra*.

additional credit or employment), *Robertson v. Allied Solutions, LLC*, 902 F.3d 690, 697 (7th Cir. 2018), or a reduced credit score that impedes the consumer's ability to obtain additional credit. *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146, 1149–50 (7th Cir. 2022). However, the mere "risk of harm" is *not* sufficiently concrete. *TransUnion*, 594 U.S. at 433–34 (plaintiffs lacked standing where inaccurate or misleading credit information was not provided to any potential creditors, as "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm.") (citations omitted); *Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 879 (7th Cir. 2020) (mere risk that inaccurate credit report could have been shared not sufficient to confer standing). Nor is confusion or worry, even if they prompt the consumer to seek out legal advice. *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) ("[T]he concreteness requirement would be an empty one if all it took was contacting a lawyer and filing suit.") (citing *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068–69 (7th Cir. 2020); *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 781 (7th Cir. 2021)).

As defendant argues in its summary judgment materials, plaintiff has no evidence of concrete injury in this case. Indeed, plaintiff has not only failed to respond to defendant's arguments of a lack of injury or actual damages in response to defendant's arguments at summary judgment, with his two declarations including no discussion of a concrete injury or harm (dkt. #48 and dkt. #59), but he testified under oath at his deposition that he merely "thought" defendant's conduct might have hurt his attempts to improve his credit score, rather than was aware that it did, much less offer an example of his supposed reduced credit rating actually causing a concrete injury. In fact, he conceded

that having an open and current debt listed on his credit report would likely increase, not decrease, his credit score if the other option was to list the debt as being discharged in bankruptcy (Hartwig Dep. (dkt. #63) 45.) He also conceded that he had not requested a credit report or checked his credit score since September of 2022. (*Id.*) Instead, plaintiff testified at his deposition that he tried to purchase another vehicle in June 2023, but that he could not because he still owed more money on the Vehicle than it was worth, resulting in his being "upside down in equity on the current vehicle." (*Id.* at 56.) In short, he has no evidence that defendant's inaccurate reporting of his debt, as opposed to his lack of funds or his recent bankruptcy, is the reason he could not purchase a new vehicle. At most, plaintiff testified that he had experienced frustration from the reporting error (*id.* at 63), but as discussed, frustration, confusion and stress are insufficient to establish a concrete injury under the constitution. *See Pierre,* 29 F.4th at 939.

Similarly, plaintiff's counsel conceded at the January 22, 2025, hearing that he had no actual evidence of any harm to plaintiff's credit score caused by defendant's reporting error; nor could he point to any admissible evidence that plaintiff had been denied additional credit or the ability to purchase another vehicle due to defendant's reporting error.

In sum, plaintiff can offer no evidence of any concrete injury caused by defendant's error in its credit reporting. Therefore, he lacks standing to pursue claims for money damages under the FCRA in federal court, and this case must be dismissed for lack of subject matter jurisdiction.

ORDER

IT IS ORDERED that:

1) This case is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

2) Plaintiff Bryan Hartwig's motion for summary judgment (dkt. #44) and defendant Byrider Finance LLC d/b/a Car Now Acceptance Company's motion for summary judgment (dkt. #50) are both DISMISSED AS MOOT.

3) The clerk of court is directed to close this case.

Entered this 28th day of January, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge